UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cv-23753-KMM

**EDWIN GARRISON**, *et al.,* on behalf of
themselves and all others similarly situated,

       *Plaintiffs,*

v.

**SAM BANKMAN-FRIED**, *et al.*,

       *Defendants.*

_____/

## PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE [ECF NO. 90]

Plaintiffs respectfully file this response to the Court's Order to Show Cause why Naomi Osaka and Shaquille O'Neal should not be dismissed for failure to serve. ECF No. 90.

It is hard to plausibly state that any of the Defendants sued in this action have not had actual knowledge of the allegations against them since it was filed. News of this lawsuit, filed closely on the heels of the collapse of FTX—the largest financial debacle in history—has been disseminated through nearly every conceivable source of news, be it on television, the internet, or otherwise. Dozens of articles published globally and nationwide specifically call out Defendants O'Neal and Osaka by name.[1]  Defendant O'Neal, as set forth below, publicly acknowledged his actual notice

---

[1] *See, e.g.,* "Shaq, Naomi Osaka, Steph Curry named as defendants in class-action suit against embattled crypto company FTX," published November 17, 2022, at https://www.yahoo.com/video/shaq-naomi-osaka-steph-curry-164000087.html (accessed March 10, 2023); "Naomi Osaka among those being sued as company she endorsed collapses," published November 17, 2022, at https://www.express.co.uk/sport/tennis/1697980/Naomi-Osaka-sued-company-endorsed-collapses-tennis-news (accessed March 10, 2023); "FTX Investors Sue Shaquille O'Neal, Naomi Osaka, Steph Curry," published November 28, 2022, at https://peopleofcolorintech.com/articles/ftx-investors-sue-shaquille-oneal-naomi-osaka-steph-curry/ (accessed March 10, 2023); "Brady, Curry, Shaq Among Athletes Facing Lawsuit in FTX

of this suit shortly after it was filed. Many Defendants chose to have their counsel proactively reach out to participate in this litigation, such as counsel for Defendants Bankman-Fried, Brady, Bundchen, Ortiz, David, the Golden State Warriors, and Lawrence. Others have, unfortunately, not come forward.

Despite Plaintiffs' diligent efforts to effect service on all 18 Defendants within the deadline mandated through Rule 4 of the Federal Rules of Civil Procedure, which, as explained below, appears to run at different times between different parties in this action, Plaintiffs respectfully submit that more time is needed to complete service on Defendants. Plaintiffs respectfully request that, rather than dismiss Defendants Osaka and O'Neal, that this Court grant an extension of time for them to effect service on them.

**A. Naomi Osaka**

The process server initially followed the results of a skip trace to locate the most recent personal address of Naomi Osaka in order to attempt to effect timely service of process, but after seven failed service attempts at this address, the process server was informed on the eighth attempt that Defendant Osaka had sold the property. *See* **Exhibit A**. The process server researched different avenues to attempt to reach Defendant Osaka or to otherwise locate her whereabouts, including reaching out to agents who may have Defendant Osaka as a client. *See* **Exhibit B**. The process server spoke with Cary at Ground Control Business Management, who confirmed that Defendant Osaka is their client, but they are not lawyers, and advised they would have her counsel or agent contact her. *Id.* Later that day, the process server received a call from Defendant Osaka's attorney, David E. Fink of Venable LLP. *Id.* He informed the process server that Osaka had moved, that her

---

Debacle," published November 16, 2022, at https://www.si.com/nfl/2022/11/16/brady-curry-shaq-among-athletes-facing-lawsuit-in-ftx-debacle (accessed March 10, 2023).

new property is gated and they would be unable to access it or otherwise get to her to serve her, and told her to stop trying to serve Defendant Osaka because he was authorized to accept service for her. *Id.* Plaintiffs' Counsel then contacted Mr. Fink in this regard, who confirmed telephonically that "Yeah, you'll never find her," but that his firm represents her in this matter and he agreed to accept service; Plaintiffs' counsel therefore sent the same day the Notice of Commencement of Action form, the Request for Waiver of Service form, and the operative Consolidated Amended Complaint, to avoid the necessity of sending formal service of process. *See* **Exhibit C.**

On March 8, 2023, in response to Plaintiffs' Counsel's email scheduling the Joint Scheduling Conference, Mr. Fink—acknowledging that he and his firm do in fact represent Defendant Osaka in this Action—disclaimed the necessity for his appearance on her behalf at the Joint Scheduling Conference, stating "We have not yet accepted service, have not made any appearance in the case, and have not yet even determined who will be representing Ms. Osaka in this matter."[2] *See* **Exhibit D**. He continued that "[i]n light of the foregoing, please do not represent that you have 'served' our client until this has actually occurred." *Id.* As a result, on March 10, 2023, Plaintiffs formally served Attorney Fink with process as Defendant Osaka's agent designated to accept service on her behalf. *See* Ex. B; *see also* **Exhibit E**.

---

[2] This is contrary to the statement the Movant Defendants made in their motion, that Defendant Osaka has not selected counsel for this action. Rather, Attorney Fink communicated that he had not yet decided which attorneys from his firm would be staffing the defense of this case.

*Edwin Garrison, et al. v. Samuel Bankman-Fried, et al.*
*Case No. 1:22-cv-23753-KMM*

**B. Shaquille O'Neal**

Shaquille O'Neal has demonstrably had actual notice of this action since at least December 15, 2022, when CNBC published an article containing O'Neal's comments during his interview with *CNBC Make It* that week regarding the allegations in this suit:[3]

> "A lot of people think I'm involved, but I was just a paid spokesperson for a commercial," O'Neal says.
>
> . . .
>
> Today, O'Neal cites his friendship with Curry as a reason he consented to appear in the ad. A spokesperson for Curry declined to comment.
>
> In the ad, O'Neal told viewers that he checked his FTX account daily. But when asked now if he's bullish on crypto, he offers a simple response: "No."
>
> "People know I'm very, very honest," O'Neal says. "I have nothing to hide. If I was heavily involved, I would be at the forefront saying, 'Hey.' But I was just a paid spokesperson."
>
> It's unclear how much money O'Neal made from his FTX endorsement deal.

Despite O'Neal's actual knowledge of this action for at least the last three months and his claim that he has "nothing to hide," to date he has not allowed himself to be served with process, has not had counsel confirm that they will represent him in this action, or otherwise appeared in this action.

Shaquille O'Neal owns and has owned a large number of homes all across the country, from Florida and Georgia, to Texas, to Nevada and California.[4] Plaintiffs' Counsel's investigation showed, however, that while Defendant O'Neal is regularly on the move between these locations (making personal service of process more difficult than with an average American), he was likely

---

[3] *See* "Shaq distances himself from crypto and FTX collapse: 'I was just a paid spokesperson,'" dated December 15, 2022, published at https://www.cnbc.com/2022/12/15/shaq-on-crypto-ftx-post-collapse-i-was-just-a-paid-spokesperson.html (accessed March 10, 2023).

[4] https://www.realtor.com/news/celebrity-real-estate/every-home-shaquille-oneal-has-owned-past-and-present/ (accessed March 10, 2023).

*Edwin Garrison, et al. v. Samuel Bankman-Fried, et al.*
*Case No. 1:22-cv-23753-KMM*

spending much of his time in Texas, based on reports that he "is expanding [his] Big Chicken franchise to Texas, and as a result, he has bought a house there to help facilitate the move."[5]

The process servers made several service attempts at the most recent, last-known address listed for Defendant O'Neal in Texas. After learning that Defendant O'Neal sold his former Sugarland residence (apparently to his ex-wife, Arnetta Yardbourgh), Plaintiffs' Counsel's investigation showed that Defendant O'Neal recently purchased another home in Texas, but the address was not listed and did not show up in the process server's skip trace. *See* **Composite Exhibit F**. After combing through public records and reports of the purchase of the new home (all of which did not list the address of the property because (1) O'Neal did not purchase the home in his individual capacity and (2) the reports only stated his home was in "Carrollton, Texas" and gave the statistics for the home, such as the square footage and number of bedrooms or bathrooms), Plaintiffs' Counsel finally located an article that gave away the full address of 4012 Sahara Court, Carrollton, Texas 75010.[6] Since obtaining the address, the process server has made numerous attempts at effecting service on O'Neal at his Carrollton address and Plaintiffs' Counsel have directed them to continue attempting service. *See* Comp. Ex. F.

At the same time, Plaintiffs' Counsel have worked to determine whether there are any attorneys who represent or have previously represented Defendant O'Neal who either (1) intend to represent him, (2) will accept service on his behalf, or (3) would provide information to facilitate his service.

---

[5]   https://thesportsrush.com/nba-news-shaquille-oneal-has-a-new-1-22-million-home-in-north-texas-amid-big-chicken-restaurant-expansion-plans/ (accessed March 10, 2023).

[6]   https://www.housedigest.com/913481/take-a-tour-of-shaquille-oneals-stunning-new-texas-home/ (accessed March 10, 2023).

Plaintiffs' counsel first reached out to Benjamine Reid, Clifton R. Gruhn, and Jeffrey A. Cohen, shareholders at the Miami office of Carlton Fields who recently represented Mr. O'Neal in many different litigation,[7] with Notice of Commencement and Request for Waiver of Service forms and a copy of the operative Amended Complaint. *See* **Composite Exhibit G**. They disclaimed knowledge of O'Neal's representation and declined to forward the materials to Mr. O'Neal. *Id.*

Then, Plaintiffs' Counsel contacted Peter W. Ross and Eric C. Lauritsen of Ross LLP, who represented O'Neal as recently as two months ago,[8] with Notice of Commencement and Request for Waiver of Service forms and a copy of the operative Amended Complaint. *See* **Exhibit H**. On a phone call, attorney Lauritsen similarly disclaimed any personal knowledge of O'Neal's representation or whereabouts. Mr. Ross's response to Plaintiffs' Counsel's email is outstanding.

Finally, Plaintiffs' Counsel contacted attorney Dennis Roach, who has apparently represented and worked with O'Neal in various matters for years.[9] On a phone call, Mr. Roach confirmed that O'Neal was his client. When asked whether he represented him in this action or if he knew who did, he said to send him the information and he would "speak to the powers that be" to confirm and would "get back" to Plaintiffs' Counsel. Plaintiffs' Counsel followed up with an email with Notice of Commencement and Request for Waiver of Service forms and a copy of the

---

[7] https://www.law.com/dailybusinessreview/2021/05/13/slam-dunk-carlton-fields-lawyers-score-413k-in-attorney-fees-for-shaquille-oneal/ (accessed March 10, 2023); *see also* https://www.abajournal.com/news/article/biglaw_lawyers_sanctioned_for_advising_shaquille_oneal_he_didnt_need_to_att (accessed March 10, 2023).

[8] https://www.law360.com/articles/1570921/shaq-settles-suit-against-pot-co-alleging-mismanaged-funds (accessed March 10, 2023).

[9] https://abcnews.go.com/Sports/shaq-lawyer-calls-incident-horseplay/story?id=23045999 (accessed March 10, 2023); https://www.prnewswire.com/news-releases/shaquille-oneal-unveils-all-star-board-of-directors-for-the-shaquille-oneal-foundation-301273421.html (accessed March 10, 2023).

operative Amended Complaint. *See* **Exhibit I**. Mr. Ross's response to Plaintiffs' Counsel's email is outstanding.

In the interim, Plaintiffs' Counsel continue their attempts to have Mr. O'Neal located and personally served, and are in the process of enlisting professional private investigators to aid in the search, to the extent necessary.

## ARGUMENT

As the Court makes clear in its Order to Show Cause, Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." ECF No. 90 (quoting Fed. R. Civ. P. 4(m)).

"Good cause exists 'only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Id.* (quoting *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (alterations in original)). However, "[e]ven in the absence of good cause, a district court has the discretion to extend the time for service of process." *Id.* (citing *id.*). Extensions based on a finding of good cause are mandatory, whereas the Court may exercise its discretion to extend the deadline under Rule 4(m) based on the factors listed in the advisory committee notes accompanying that rule. *Id.* (citing *Hong-Diep Vu v. Phong Ho*, 756 F. App'x 881, 882 (11th Cir. 2018)). These factors include whether the statute of limitations would bar a refiled action, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service. *See*

*Edwin Garrison, et al. v. Samuel Bankman-Fried, et al.*
*Case No. 1:22-cv-23753-KMM*

*Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132–33 (11th Cir. 2005) (quoting Fed. R. Civ. P. 4(m), Advisory Comm. Note, 1993 Amendments).

On the facts at issue here, Plaintiffs believe that good cause exists for a first extension of time to complete service of process on Defendants. For both Defendants O'Neal and Osaka, despite numerous service attempts, Plaintiffs' process servers relied on faulty data, in large part because the new homes that both Defendants purchased were done so through LLCs in order to maintain their anonymity, and therefore did not initially show up when searched. *Watts v. City of Miami*, CV 15-21271-CIV, 2016 WL 8939143, at *2 (S.D. Fla. Feb. 22, 2016) (Scola, J.) (finding good cause to extend the deadline *a second time* for plaintiff to serve defendant where process server relied on faulty information regarding defendant's work schedule and ultimately served defendant 20 days after the expiration of the first extension, and explaining that "[e]ven if the [p]laintiff's documentation was insufficient to establish good cause, the Court would exercise its discretion to extend the deadline") (citing *Horenkamp*, 402 F.3d at 1132–3; Fed. R. Civ. P. 4(m) advisory committee's notes to 1993 amendment ("Relief may be justified, for example ... if the defendant is evading service....")).

Once Plaintiffs and their process servers discovered the addresses were outdated, service was attempted at the new addresses. *See In re Cutuli*, 13 F.4th 1342, 1348 (11th Cir. 2021) (finding the "court acted within its considerable discretion to grant an extension of time regardless of whether there was good cause for [the] failure to serve on time" where the plaintiff was not "sitting on his hands between the initial service attempt and the grant of the extension"); *see also Auto-Owners Ins. Co. v. Traster*, No. 616CV2051ORL41DCI, 2017 WL 10080181, at *2 (M.D. Fla. Apr. 5, 2017) (granting the plaintiff an extension of time to serve the defendant upon finding that

"Plaintiff has diligently attempted to serve Defendant" after searching for alternate addresses and means of service when first results were discovered to be erroneous).

Moreover, Defendant Osaka has now been served through personal service on her counsel, who instructed the process server to cease attempts to personally serve Defendant Osaka because her property is gated and who represented to the process server that he was designated to accept service on her behalf. *See* Fed. R. Civ. P. 4(e)(2)(c); *See also Durbin Paper Stock Co. v. Hossain*, 97 F.R.D. 639, 639 (S.D. Fla. 1982) (explaining that "a party must have appointed his attorney as his agent for service of process before personal jurisdiction is obtained over the party by service on his attorney.") (citing *Ransom v. Brennan,* 437 F.2d 513 (5th Cir. 1971); *Miree v. United States,* 490 F. Supp. 768 (N.D. Ga. 1980)).

To the extent that that there is any issue with how this service was effectuated, good cause further exists for an extension to continue attempts to serve Defendant Osaka. *See First Sw. Fin. Services, LLC v. Best Light, LLC*, 13-20049-CIV, 2015 WL 12781193, at *2 (S.D. Fla. Apr. 15, 2015) ("Courts have extended the time for service when a plaintiff, in attempting to serve process, relied on a statement by an individual that he or she was authorized to accept service on the defendant's behalf, even though that individual was not in fact authorized.") (collecting cases).[10]

Even regardless of whether there is good cause for a mandatory extension of time to serve Defendants, Plaintiffs have made a sufficient showing that the Court should extend the deadline to serve them, anyway. In deciding whether to exercise discretion to extend the time for service, Courts consider a variety of other factors, including the possibility of prejudice to the defendant,

---

[10] Further, Defendant Osaka's counsel is in possession of a Notice of Commencement of Action and Request for Waiver of Service form, for which the deadline to respond is Wednesday, April 5, 2023. To obviate any further concerns with service, Defendant Osaka and her counsel would ostensibly fulfill Osaka's "duty to avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1).

the impact on the judicial proceedings, the reason for the delay, whether the defendant had actual notice, and whether the complaint was eventually served properly. *First Sw. Fin. Services, LLC*, 2015 WL 12781193, at *1 (collecting cases).

Here, there is no conceivable prejudice to Defendants in granting the extension for Plaintiffs to serve them. Filed concurrently with this Response is also Plaintiffs' unopposed motion to extend the deadline to hold the joint conference, seeking an unopposed extension of time to hold the conference after these Defendants have been served. ECF No. 98. No discovery has yet occurred, and the current deadline for all served Defendants to file their response to the operative Consolidated Amended Complaint is April 14, 2023. ECF No. 49. Similarly, the extension to serve Defendants would have little impact on the judicial proceedings, as a scheduling order is not yet in place and not all served Defendants have yet entered their appearances to participate in this litigation. *See Todd v. City of LaFayette*, 3:12CV589-MHT, 2013 WL 6050855, at *4 (M.D. Ala. Sept. 23, 2013) (finding no prejudice to defendant served 41 days after the deadline to do so, "a week and a half longer than the delay the Eleventh Circuit approved in *Horenkamp. Id.* at 1130," because defendant "would have had to move to extend the time for discovery even if he was served at the tail end of the 120–day window" where co-defendants went forward in the case without him, "a common occurrence in multi-party litigation").

Moreover, as shown above, Defendants certainly have actual notice of these proceedings, with O'Neal acknowledging and publicly responding to the allegations in this action in nationwide press on December 15, 2023. The fact that O'Neal has not yet entered an appearance through counsel, 6 of whom are in receipt of Notices of Commencement of Action and Requests for Waiver of Service forms, tends to illustrate that the failure to participate in these proceedings has thus far

been intentional. By comparison, many of the Defendants who have appeared in this action have done so through voluntarily appearing and executing waiver of service forms. ECF No. 87 at 3–4.

Finally, Plaintiffs have diligently attempted to effect service on Defendants, having served 17 of the 18 Defendants and continuing their attempts to complete service as soon as practicable. Moreover, it appears there are a number of different service deadlines currently in effect such that Plaintiffs submit any extension should render the new deadline consistent.

Although the case was consolidated for all purposes, the two cases still retain their own status and the consolidation does not affect issues such as the deadline for service of process. As one district court recently explained:

> Cases consolidated under Rule 42(a) ... retain their separate identity. *Patton v. Aerojet Ordnance Co.*, 765 F.2d 604, 606 (6th Cir. 1985). And although "consolidation is permitted as a matter of convenience and economy in administration, [it] does not merge the suits into a single cause, or change the rights of the parties, *or make those who are parties in one suit parties in another*." *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479... (1933). Therefore, it is the district court's responsibility to ensure that parties are not prejudiced by consolidation. *See* 9 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2385 (2d ed. 1994).

*Johnson v. Barney*, 1:21-CV-141, 2021 WL 7184242, at *2–3 (S.D. Ohio Dec. 16, 2021) (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 412-13 (6th Cir. 1998)) (emphasis in original).

Further, the deadline for service of process begins to run for any new Defendants added to an Amended Complaint at the time the amended complaint is filed. *See Charles v. Bradshaw*, 2018 WL 11309206, at *2 (S.D. Fla. Aug. 14, 2018) *aff'd*, 782 F. App'x 991 (11th Cir. 2019) ("Filing an amended complaint does not toll the Rule 4(m) service period and thereby provide an additional 90 days for service *unless* the amended complaint adds a new defendant … Plaintiff argues that he had ninety days from the filing of his Amended Complaint to serve Defendant … However, since Plaintiff did not add new defendants in filing his Amended Complaint, the deadline for Plaintiff to serve process was … ninety days from when his original Complaint was filed.") (citing 4B Charles

Alan Wright & Arthur R. Miller, Federal Practice & Procedure, Time Limit for Service § 1137 (4th ed.)) (emphasis added).

As the *Podalsky* action commenced on December 7, 2022, the deadline to serve Defendants was March 6, 2023, as to the *Podalsky* Plaintiffs (and March 7, 2023, as to Plaintiff Kavuri for all Defendants, and Garrison as to the FTX Insider Defendants—Ellison, Singh, Wang, Friedman, and Trabucco—as they joined the *Podalsky* action by amendment December 8th).

Based on these facts, and as set forth in Plaintiffs' Unopposed Motion for Extension of Time to hold the Joint Scheduling Conference, [ECF No. 98], not only does good cause exist to extend the deadline to serve Defendants, but an extension would help to bring all Parties in line with the same schedule, increasing the efficiency with which this action could then proceed.

## **CONCLUSION**

Plaintiffs respectfully request that the Court either find good cause or exercise its discretion in extending the deadlines so that all Plaintiffs have an additional 60 days from the date of the Court's order to complete service of process on Defendants, or such other length of time as the Court deems appropriate, together with such other and further relief the Court deems just, equitable and proper.

*Edwin Garrison, et al. v. Samuel Bankman-Fried, et al.*
*Case No. 1:22-cv-23753-KMM*

Dated: March 10, 2023

Respectfully submitted,

By: */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

By: */s/ David Boies*
David Boies
(*Pro Hac Vice*)
Alex Boies
(*Pro Hac Vice*)
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Phone: (914) 749–8200
dboies@bsfllp.com

By: */s/ Stephen Neal Zack*
Stephen Neal Zack
Florida Bar No. 145215
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., Suite 2800
Miami, FL 33131
Office: 305-539-8400
szack@bsfllp.com

*Co-Counsel for Plaintiff and the Class*

*Edwin Garrison, et al. v. Samuel Bankman-Fried, et al.*
*Case No. 1:22-cv-23753-KMM*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing was filed on March 10, 2023, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam M. Moskowitz*

ADAM M. MOSKOWITZ